**E-Filed 8/10/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEAN ELISE GREER,<br><br>                    Plaintiff,<br><br>         v.<br><br>LOCKHEED MARTIN, ESIS INC., and DOES 1 through 20 inclusive,<br><br>                    Defendants. | Case Number CV 10-1704 JF (HRL)<br><br>**ORDER[1] DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND TO REMAND ACTION TO STATE COURT**<br><br>[re doc. no. 7] |

Plaintiff seeks leave to file a first amended complaint and to remand the instant action to the Santa Clara Superior Court for lack of diversity jurisdiction pursuant to 28 U.S.C. § 1332, *et seq.* (2006). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on July 16, 2010. For the reasons discussed below, the motion will be denied without prejudice.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

A. **Factual History**

Plaintiff Jean Elsie Greer ("Plaintiff") is a resident of Alameda County, California. (Pl.'s Am. Compl., ¶ 1.) Defendant Lockheed Martin Corporation ("Lockheed") is a Delaware corporation doing business in Santa Clara County, California. (Pl.'s Am. Compl., ¶ 2.) Defendant Enterprise Information Services ("EIS") is a Florida corporation also doing business in Santa Clara County, California (Pl.'s Am. Compl., ¶ 3); its principal place of business is Orlando, Florida. (Pl.'s Am. Compl., ¶ 3.)

Plaintiff began working for Lockheed in 1962. In 1991, Lockheed retained EIS as a subcontractor for the technical support tasks performed by Plaintiff and other employees in Plaintiff's department. (Pl.'s Am. Compl., ¶ 4.) From 1991 until Plaintiff's termination on April 7, 2009, Lockheed continued to pay Plaintiff's salary directly (Pl.'s Am. Compl., ¶¶ 4-6), and Plaintiff worked at Lockheed's Sunnyvale facility. (Pl.'s Am. Compl., ¶ 4.) At the time of her termination, Plaintiff was seventy-seven years old and was employed as a Computer Operator Specialist. (Pl.'s Am. Compl,. ¶¶ 5-6.) After being terminated, Plaintiff filed charges against Lockheed with the United States Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12100, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. (Def.'s Opp'n 1.) Plaintiff obtained a right-to-sue letter from the EEOC within a year of commencing the instant action in Santa Clara Superior Court on March 29, 2010. Defendants removed the action to this Court on April 21, 2010.

Plaintiff now seeks leave to amend her complaint to include three additional claims for relief and to add two individual defendants: Lee Bandettini and Jeanine Reed. (Reply 4.) Bandettini is a resident of the California who was and is employed as a manager at Lockheed's Sunnyvale facility. (Pl.'s Am. Compl., ¶ 8.) Bandettini was Plaintiff's manager from approximately 1994 until Plaintiff's termination on April 7, 2009. (Pl.'s Am. Compl., ¶ 8.) Reed also is a resident of the California. (Pl.'s Am. Compl., ¶ 9.) Reed was Plaintiff's

2

immediate supervisor from approximately 2006 until Plaintiff's termination. (Pl.'s Am. Compl., ¶ 9.) Reed directed Plaintiff's daily work activities. (Pl.'s Am., Compl., ¶ 9.)

Plaintiff alleges that from approximately 1994 until approximately 2006, she maintained a good working relationship with Bandettini and Reed. (Pl.'s Am. Compl., ¶ 13.) During this time, she received performance bonuses and satisfactory performance reviews and was rarely criticized. (Pl.'s Am. Compl., ¶¶ 13-14.) Plaintiff claims that at some point in or around late 2006, Bandettini and Reed began discriminating against and harassing her because of her age. (Pl.'s Am. Compl., ¶ 15.) Plaintiff claims that Bandettini repeatedly asked her when she would retire to "make way for younger people," (Pl.'s Am. Compl., ¶ 15), and that Bandettini began to make derogatory comments about Plaintiff's age, including references to Plaintiff in the presence of coworkers as "old" and "tired." (Pl.'s Am. Compl., ¶ 15.) Other employees of Lockheed and EIS allegedly made similar age-based comments. (Pl.'s Am. Compl., ¶ 15.) Plaintiff alleges that she complained about the discriminatory treatment and harassment to both Lockheed and EIS throughout 2006, but that to her knowledge Defendants never conducted an investigation, nor did they reprimand any employees for their actions. (Pl.'s Am. Compl., ¶¶ 15-16.)

On January 11, 2007, Plaintiff fell on a damaged raised tile located in the back room area of Lockheed's Sunnyvale facility. (Pl.'s Am. Compl., ¶ 18.) The fall caused Plaintiff to tear ligaments in her left leg. (*Id.*) Bandettini and Reed were notified of Plaintiff's injury later that day. (Pl.'s Am. Compl., ¶ 19.) The following day, Plaintiff received medical treatment for her injuries and did not come to work. (Pl.'s Am. Compl., ¶ 20.) On Saturday, January 13, 2007, Bandettini called Plaintiff and threatened to terminate her if she did not return to work by the following Tuesday. (Pl.'s Am. Compl., ¶ 21.) Because she could not come to work and feared that she would be terminated, Plaintiff called Cynthia McShan, Human Resources Manager for Lockheed and EIS, and explained her medical condition. (Pl.'s Am. Compl., ¶ 21.) McShan informed Plaintiff that she did not have to report to work the following Tuesday as demanded by Bandettini. (Pl.'s Am. Compl., ¶ 21.) The following week, Plaintiff sought legal representation. (Pl.'s Am. Compl., ¶ 21.)

3

After Plaintiff's then-counsel contacted Lockheed and EIS regarding Plaintiff's injuries, Plaintiff went on disability leave. (Pl.'s Am. Compl., ¶ 22.) Plaintiff remained on disability leave from January 2007 to March 2007. (Pl.'s Am. Compl., ¶ 22.) Plaintiff alleges that when she returned from disability leave, Bandettini and Reed once again harassed and discriminated against her. (Pl.'s Am. Compl., ¶ 23.) She claims that both Bandettini and Reed asked her regularly about retirement (Pl.'s Am. Compl., ¶ 25), continued to make harassing comments about her in the presence of her coworkers (Pl.'s Am. Compl., ¶ 26), and that although the accident in January 2007 had left her with a physical disability, made no efforts to accommodate her. (Pl.'s Am. Compl., ¶ 27.) Instead, Bandettini and Reed assigned Plaintiff additional manual work for which Plaintiff did not have primary responsibility. (Pl.'s Am. Compl., ¶ 27.) Plaintiff alleges that Reed repeatedly threatened to terminate her and insisted that she deliver heavy stock items to internal clients. (Pl.'s Am. Compl., ¶ 29.)

In March 2008, Bandettini told Plaintiff to go back on disability leave. (Pl.'s Am. Compl., ¶ 33.) On or about March 11, 2008, Lee Saigon, an employee of EIS, told Plaintiff that Bandettini was at her cubicle and was going to terminate her employment. (Pl.'s Am. Compl., ¶ 33.) After escorting Plaintiff to his office, Bandettini and an unidentified Human Resources employee told Plaintiff that she had to go on leave and leave the premises. (Pl.'s Am. Compl., ¶ 33.) Bandettini attempted to make Plaintiff sign a letter taking disability leave, which she refused to do. (Pl.'s Am. Compl., ¶ 33.) After her legal counsel intervened, Plaintiff was allowed to continue to work. (Pl.'s Am. Compl., ¶ 33.)

Plaintiff alleges that prior to her termination on April 7, 2009, Defendants changed the classifications of two other employees who worked in her department, and that the classifications of these employees were higher than her own. (Pl.'s Am. Compl., ¶ 35.) Both employees are younger than Plaintiff. (Pl.'s Am. Compl., ¶ 35.) On April 7, 2009, Plaintiff was told that she was being laid off because of re-organization. (Pl.'s Am. Compl., ¶ 36.; Def.'s Opp'n 1.) After the termination, Reed told Plaintiff that she was fortunate to have been selected for termination because she could "enjoy the last years of her life." (Pl.'s Am. Compl., ¶ 37.) Plaintiff alleges

4

that she was the only employee in her department who was terminated.  (Pl.'s Am. Compl., ¶ 36.) Plaintiff also alleges that the two younger employees took over her job duties following her termination.  (Pl.'s Am. Compl., ¶ 39.)

## II. DISCUSSION

**A.      Legal Standard**

Federal courts are courts of limited jurisdiction.  That jurisdiction includes civil actions between "citizens of different States" in which the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1) (2006).  Any moving party asserting diversity jurisdiction bears the burden of showing that diversity exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In this case, the Court has jurisdiction only if citizenship of all Defendants is diverse from the citizenship of Plaintiff.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 88 (1996) (stating that diversity jurisdiction requires "complete diversity of citizenship").  Similarly, when an action has been removed from state court to federal court under 28 U.S.C. § 1441, there is an equally "strong presumption" against removal jurisdiction, unless the defendant can establish that removal was proper.  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). Any such doubt as to removability must be resolved in favor of remand.  *Id.*

There is an exception to the requirement of complete diversity in cases of fraudulent joinder.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  A plaintiff cannot defeat diversity jurisdiction simply by joining a non-diverse defendant.  *McCabe*, 811 F.2d at 1339 ("fraudulent joinder is a term of art").  In order to prove fraudulent joinder, the defendant must show that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious, according to the settled rules of the state."  *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (citing *McCabe*, 811 F.2d at 1339); *see also Kruso v. International Telephone & Telegraph Corp.*, 872 F.3d 1416, 1426 (9th Cir. 1989); *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal 2006) ("Joinder of a defendant is fraudulent if the defendant cannot be liable to the plaintiff on *any* theory alleged in the complaint." (emphasis

5

added)). The court may go outside the pleadings, and the defendant may present facts showing that the joinder is fraudulent. *See Ritchy v. Upjohn Drug. Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). However, there is "a heavy burden on the defendant as fraudulent joinder must be proven by clear and convincing evidence and all disputed questions of fact and all ambiguities in the controlling law are to be resolved in the plaintiff's favor." *Leung v. Sumitomo Corp. of Am.*, No. 09-5825 SI, 2010 U.S. Dist LEXIS 29039, at *6 (N.D. Cal. Mar. 9, 2010).

Plaintiff contends that the instant motion is governed by Fed. R. Civ. Pro. 15 (a), which requires that leave to amend pleadings be given freely. (Reply 4.) Lockheed argues that because the addition of Bandettini and Reed would destroy diversity, the appropriate standard in the present context is set forth in 28 U.S.C. § 1447(e). (Defs.' Opp'n 3 (quoting *Bakshi v. Bayer Healthcare, LLC*, No. C07-00881 CW, 2007 U.S. Dist. LEXIS 33801, *4 (N.D. Cal. 2007) ("[A] district court must scrutinize a proposed diversity-destroying amendment to ensure that it is proper; in other words, 28 U.S.C. § 1447(e) applies and the logic and policy of Rule 15(a) do not apply.")).) Lockheed contends specifically that Plaintiff's post-removal amendment under Rule 15(a) is an impermissible attempt to destroy complete diversity by adding two California citizens as defendants.

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, other courts in this district have recognized that "the permissive amendment under Rule 15(a) does not apply when a plaintiff amends her complaint after removal to add a diversity destroying defendant." *Chan v. Bucephalus Alternative Energy Group, LLC*, No. C 08-04537, 2009 WL 1108744, at *3 (N.D.Cal. 2009) (citing *Bakshi v. Bayer Healthcare, LLC*, No. C07-00881 CW, 2007 WL 1232049, at *2 (N.D. Cal. 2007)); *see also Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086-87 (C.D. Cal. 1999) ("To apply the permissive standard of Rule 15(a) in this situation would allow a plaintiff to improperly manipulate the forum of an action."). Thus, when a plaintiff amends her complaint after removal to add a diversity-destroying defendant, this Court will scrutinize the amendment pursuant to 28 U.S.C. § 1447(e). *Chan*, 2009 WL 1108744, at *3.

6

Under 28 U.S.C. § 1447 (e), "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court *may* deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). The Ninth Circuit has recognized that the "permissive terms" of § 1447(e) grant the district court discretion when determining whether to permit joinder that will destroy diversity jurisdiction. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir.1998); *see also Chan*, 2009 WL 1108744, at *3 ("Whether to permit an amendment that will destroy diversity jurisdiction remains in the sound discretion of the court."). Courts in this district generally consider five factors when determining whether to allow joinder under § 1447(e): (1) whether the party sought to be joined is needed for just adjudication and would be joined under Fed. R. Civ. Pro. 19(a); (2) whether the statute of limitations would prevent the filing of a new action against the new defendant in state court; (3) whether there has been an unexplained delay in seeking to join the new defendant; (4) whether plaintiff seeks to join the new party solely to defeat federal jurisdiction; and (5) the strength of the claims against the new defendant. *Id.* (citing *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000)); *see also Clinco*, 41 F. Supp. 2d at 1082.

### 1. Whether Joinder of Bandettini and Reed Is Necessary for "Just Adjudication"

A necessary party under Rule 19(a) is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *IBC Aviation Servs. Inc.*, 125 F. Supp. 2d at 1011 (quoting *CP Nat'l. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir.1991)). The necessary party standard is met when "failure to join will lead to separate and redundant actions." *Id.* "Although courts consider whether a party would meet Fed. R. Civ. Proc. 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19." *Id.* at 1011-12 (citing *Trotman v. United Parcel Service*, No. C-96-1168-VRW, 1996 WL

7

428333, at *1 (N.D.Cal.1996)).  Moreover, "Congress gave the courts broad discretion to allow joinder, even though remand may result." *Chan*, 2009 WL 1108744, at *3 (citing *Righetti v. Shell Oil Co.*, 711 F. Supp. 531, 535 (N.D. Cal. 1989)).  Thus, courts generally have held that the first factor "favors joinder and remand 'when failure to join will lead to separate and redundant actions,' but not when 'defendants are only tangentially related to the cause of action or would not prevent complete relief.'"  *Chan*, 2009 WL 1108744, at *3 (quoting *Boon* v. Allstate Ins. Co., 229 F. Supp. 2d 1016, 1022 (C.D. Cal. 2002)).

In *IBC Aviation Servs., Inc.*, the plaintiff brought a claim in the superior court, alleging breach of contract and other related torts.  *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d at 1009.  The defendant removed the case to the district court pursuant to 28 U.S.C. § 1332(a)(2).  *Id*.  Thereafter, the plaintiff moved for leave to amend its complaint to add a non-diverse individual defendant–the vice-president of one of the corporate defendants–to the action.  *Id*. at 1009-10.  Because the added defendant was "the principal person responsible for the acts underlying [the plaintiff's] claim," the court found that the diversity-destroying amendment was proper.  *Id*. at 1012.  The court reasoned that "disallowing the amendment would hinder [the plaintiff] from asserting its rights against an employee directly involved in the alleged breach of the Cargo Handling Agreement and related causes of action."  *Id*.

Here, Lockheed claims that joinder of Bandettini and Reed is unnecessary for just adjudication.  (Defs.' Opp'n 7.)  It argues that Bandettini and Reed "are not related to *eleven* of the fourteen causes of action at all because those claims can only be made against an employer: claims for failure to provide reasonable accommodation under the FEHA, to engage in the interactive process under the FEHA, or to take corrective action to prevent discrimination under the FEHA; tree wrongful termination claims, and four wage and hour claims." (Defs.' Opp'n 6 (emphasis in original).)  Plaintiff asserts, however, that Bandettini and Reed not only were "active participants in the harassment based on age and harassment based on disability" but also were "the primary actors involved in Plaintiff's intentional infliction of emotional distress claims." (Reply 5.)

8

Plaintiff's proposed first amended complaint alleges that Bandettini and Reed "discriminated against Plaintiff on the basis of her age, harassed Plaintiff on the basis of her age, and terminated Plaintiff's employment because of her age in violation of the California Fair Employment and Housing Act." (Pl.'s Am. Compl. ¶ 42.) As in *IBC Aviation Servs., Inc.*, the named individual defendants are alleged to have been the principal actors on behalf of the employer, and their conduct is the primary basis for Plaintiff's first, second, and fourteenth claims for relief. Their alleged actions also bear more than a tangential relationship to several of Plaintiff's other claims. The Court concludes that they properly could be joined under Rule 19(a), and that their joinder is necessary for just adjudication of at least some of Plaintiff's claims.

### 2.  Statute of Limitations

California Government Code § 12960 provides that a charge of wrongful termination must be filed with the Department of Employment and Housing ("DFEH") within "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." Cal. Gov. Code § 12960. Lockheed contends that because Plaintiff did not file a charge with the DFEH within this period, her claims against Bandettini and Reed are barred by the statute of limitations.[2] (Defs.' Opp'n 7.)

Plaintiff acknowledges that she did not file a timely charge with the DFEH that names Bandettini or Reed. (Reply 6.) However, she contends that her failure to file such a charge resulted from an error made on the part of the EEOC's Oakland, California office. *Id.* She claims that she did file a timely charge against Bandettini and Reed with the EEOC, but that the EEOC erroneously notified the corresponding state agency in Florida rather than the DFEH. Plaintiff's counsel represents that she is in the process of seeking relief from this error.

### 3.  Timeliness of the Amendment

When determining whether to allow an amendment to add a non-diverse party, "courts

---

[2] Lockheed points out that because Plaintiff's employment was terminated on April 7, 2009, she was required to file her administrative charge against Bandettini and Reed not later than April 7, 2010.

9

consider whether amendment was attempted in a timely fashion." *Chan*, 2009 WL 1108744, at *5 (finding amendment occurring approximately seven weeks after the filing of the original complaint timely); *see also Clinc*o, 41 F. Supp. 2d at 1083 (finding amendment occurring approximately six weeks after the filing of the original complaint timely).

Plaintiff filed the instant motion approximately seven weeks after Defendant removed the instant action to federal court. (Defs.' Opp'n 9.) The motion is timely.

### 4. Motive for Joinder

Courts in this district have recognized that "the motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." *Chan*, 2009 WL 1108744, at *5 (citing *Clinco*, 41 F. Supp. 2d at 1083). Thus, "a trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Id.*

Lockheed contends that Plaintiff's motive in seeking joinder of Bandettini and Reed is "simply a transparent attempt to defeat diversity jurisdiction." (Defs.' Opp'n 9.) It argues that Plaintiff's motion should be denied because "Plaintiff cannot maintain either FEHA cause of action as she has failed to exhaust her administrative remedies [by filing any FEHA claims against Defendants Lockheed, Bandettini, and Reed] and the intentional infliction of emotional distress claim is preempted by worker's compensation law." (Defs.' Opp'n 10.) On the present state of the record, the Court agrees with Defendants. However, should Plaintiff obtain relief from the administrative agency, the analysis would favor Plaintiff.

### 5. Strength of the Claims

Under § 1447(e), "courts consider whether the claims against the new party sought to be added seem meritorious." *Chan*, WL 1108744, at *5 (citing *Clinco*, 41 F. Supp. 2d at 1083). The primary inquiry is "whether a new claim sought to be added seems to have merit." *Goodman v. Travelers Ins. Co.*, 561 F. Supp. 1111, 1113-14 (N.D. Cal.1983). For instance, in *Chan*, the plaintiff, a potential investor, filed a motion to join an individual non-diverse

10

defendant and remand an action for breach of oral contract, fraud, and conversion. *Chan*, 2009 WL 1108744, at *1. Joinder of the non-diverse defendant destroyed diversity. *Id*. The court found that claims against the individual non-diverse defendant were meritorious because the claims were "potentially valid" under California law. *Id*. at *6.

Here, as in *Chan*, Plaintiff's claims against Bandettini and Reed are potentially meritorious. Although Plaintiff has failed to exhaust her administrative remedies, it appears that Plaintiff yet may be able to do so in light of the alleged administrative error on the part of the EEOC. Because Plaintiff alleges conduct by Bendettini and Reed that arguably falls outside the scope of their duties as her supervisors, Plaintiff's first and second claims for relief are at least "potentially valid" under California law. *See id.*

### III. CONCLUSION

Because Plaintiff has failed to exhaust her administrative remedies, the instant motion for leave to file a first amended complaint and remand to state court will be denied without prejudice. Should Plaintiff obtain a right-to-sue letter with respect to Bandettini and Reed, counsel shall notify the Court and Defendants forthwith.

**IT IS SO ORDERED.**

DATED: 8/10/2010

JEREMY FOGEL
United States District Judge

11

Case Number 10-01704 JF (PVT)
ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND TO REMAND ACTION TO STATE COURT
(JFEX3)