IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN ELISE GREER,<br><br>    Plaintiff,<br><br>  v.<br><br>LOCKHEED MARTIN CORPORATION,<br>and Does 1 through 20 inclusive,<br><br>    Defendants.<br>_____ / | No. C 10-01704 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this employment discrimination action, defendant moves for summary judgment on the one remaining claim for wrongful termination in violation of public policy. For the reasons set forth below, defendant's motion is **GRANTED**.

## STATEMENT

Plaintiff Jean Elise Greer began working for defendant in 1962 (Winters Exh. 1 at 8). Plaintiff was laid-off in April 2009, at which time she held the title of Computer Operations Specialist in the Special Programs Computer Facility ("SPCF") located within defendant's Enterprise Operations Division in Sunnyvale (Rogers Decl. ¶ 7). The SPCF unit, commonly referred to as the Computer Operations Group ("COG") was part of defendant's Enterprise Business Services ("EBS") department, which provided technical and computer assistance to defendant's other business groups (Rogers Decl. ¶ 8).

Beginning in September 2007, due to reduction in staff, employees in plaintiff's workgroup were required to learn how to do file transfers and to perform file transfers regularly (Winters Exhs. 2 at 50–52; 4 at 41–42; Young Decl. ¶ 4). A file transfer would transfer files between classified and unclassified networks and was performed by persons with COG's special clearance, as users did not have authorization to make such transfers (Winters Exh. 3 at 58–59).

All employees in plaintiff's department received the same file transfer training from Jeannine Reid, who was the lead of operations personnel (Winters Exh. 2 at 49). Training consisted of three steps. On the first day of training, the trainees would watch Ms. Reid while she performed the transfers. The next day, Ms. Reid would provide the trainees with the written file transfer procedures and would sit next to them to observe their first attempt at performing a file transfer. Then, Ms. Reid would spot check the work until she and the employee agreed that the employee could perform the transfer by herself (Winters Exh. 3 at 77–78). On average, the computer operators became proficient in the file transfer process within two weeks (Winters Exh. 3 at 79–80). Plaintiff did not ever become proficient in the file transfer process and became the only employee to receive one-on-one assistance from Ms. Reid after participating in the initial training (Winters Exh. 2 at 48).

Plaintiff began receiving one hour of training on the file transfer process each morning. Ms. Reid drafted weekly training reports to summarize plaintiff's progress (Winters Exh. 2 at 176–77). Training continued for nearly one year (Sagun Decl. ¶ 5). At the time of plaintiff's termination in April 2009, plaintiff was still unable to perform a file transfer (Sagun Decl. ¶ 5).

Plaintiff received a "basic contributor" rating in her 2008 performance evaluation, dated December 5, 2008. The evaluation stated (Winters Exh. 5):

> Jean has been in training for over 12 months performing the 8AM file transfer process activity with assistance from the team lead. She has been receiving one-on-one instruction for this effort during the review period. She continues this training and is working to become proficient. Jean's proficiency level at this point still remains substantially below her peer group and at a very basic level. This is a critical area that Jean needs to improve upon. Jean needs to be able to perform technical duties that help the department.

2

Plaintiff's inability to perform a file transfer was the "majority of the issue" that formed the basis for her "basic contributor" rating (Winters Exh. 2 at 50).

Prior to being required to perform file transfers, plaintiff's primary duties were limited to clerical work such as transferring callers to other computer specialists for assistance, replacing toner in printers, fixing paper jams labeling and removing computer tapes, downloading material to back up computers, and directing walk-ins to computer specialists for assistance (Winters Exh. 4 at 42–44). Plaintiff's co-workers described her as an employee with a limited skill set and limited computer knowledge (Sagun Decl. ¶¶ 3–4; Young Decl. ¶5; Winters Exh. 3 at 43–44).

In October 2008, Mike Rogers, senior manager of enterprise operations replaced Lee Bandettini as plaintiff's manager (Rogers Decl. ¶ 5). Plaintiff had limited interactions with Mr. Rogers. In her deposition, plaintiff indicated that she only spoke to Mr. Rogers five times during her employment, three times regarding tardiness, one time regarding her inability to perform the file transfer, and one time regarding her termination (Winters Exh. 4 at 25, 33, 140–41). Plaintiff also stated that she never met Mr. Rogers in person (Winters Exh. 4 at 23).

The EBS department, plaintiff's department, reorganized in 2007 and 2008. In 2009, Mr. Rogers was informed by leadership at LMC that due to the downturn in the economy the department would need to undergo further reorganization and reduction in EBS staffing levels. The result of the 2009 reorganization was that LMC "eliminated about eighty EBS employees' jobs, or approximately two percent of its positions, including the position held by Ms. Greer." The individuals who were laid-off were not replaced (Rogers Decl. ¶¶ 20, 21).

LMC had established procedures for conducting lay-offs, which constituted a multi-stage process. LMC employed this process for the 2009 reorganization and work force reduction. *First,* a work force reduction would be proposed by LMC senior leadership. *Second*, the manager in the affected departments would be provided with a target number of positions to reduce. *Third*, the manager would be required to select individuals for lay-offs and submit a list of those individuals to the Work Force Reduction Committee. *Fourth*, the Committee would make the decision to accept or reject the manager's recommendation (Rogers Decl. ¶¶ 21, 22, 23).

3

Mr. Rogers was notified by his supervisor that he would need to recommend 12 individuals for lay-off from the groups he oversaw, which included plaintiff's group (Rogers Decl. ¶ 21). Mr. Rogers made the decision to select plaintiff for lay-off (Rogers Decl. ¶ 23). In selecting the employees to be laid-off, Mr. Rogers reviewed the following factors: performance review assessment scores from years 2006, 2007, and 2008, length of service, versatility and experience, growth and future potential, knowledge of various computer skills, reliability, and initiative. Mr. Rogers reviewed these factors when considering Ms. Greer as a candidate to select for lay-off (*ibid.*). Attorney Iscandari's supplemental declaration in support of the opposition to the motion for summary judgement states that Mr. Rogers contradicted his own declaration when he stated during deposition that when considering plaintiff for lay-off he reviewed only her 2008 performance review (Iscandari Supp. Exh. 4 at 81). There is no contradiction. Mr. Rogers reviewed assessment *scores* from years 2006 through 2008 and only reviewed the performance *review* from 2008.

Plaintiff was the "lowest performer across the board in these categories." As such, Mr. Rogers believed she was "one of the twelve people in the organization least equipped to handle the increased workload that would result from a forced reduction in [] staff" (Rogers Decl. ¶ 24). After selecting plaintiff for lay-off, Mr. Rogers submitted her name to his manager (Iscandari Supp. Exh. 5 at 52–53). Mr. Rogers' recommendation to lay-off plaintiff was accepted. Plaintiff was notified by letter in March 2009, that she would be laid-off, effective April 7, 2009 (Rogers Exh. A).

Prior to plaintiff's termination, Mr. Rogers (Rogers Decl. ¶ 18):

> never discussed Ms. Greer's retirement plans . . . she never complained to [him] about being threatened, harassed, or intimidated by Ms. Reid or Lee Bandettini. Further, [Mr. Rogers] was not aware of any complaints Ms. Greer allegedly made to Human Resources on any matter and [he had] never been aware of any complaints Ms. Greer made to any administrative or governmental agency regarding her employment with LMC. Lastly, [he] never heard anyone make disparaging remarks about Ms. Greer's age, retirement status, or physical condition.

Furthermore, Mr. Rogers never communicated with human resources employee Julie Raimondi regarding plaintiff prior to plaintiff's lay-off notification (*id.* at ¶ 19).

4

\* \* \*

Prior to the close of briefing, plaintiff put forward no evidence in opposition to the motion for summary judgment. Plaintiff submitted only a declaration of counsel, which summarized the history of discovery in this action. The declaration did not put forward any evidence relating to the merits of the summary judgment motion. Approximately ninety minutes prior to the hearing on the motion and after the close of briefing, plaintiff filed a supplemental declaration appending excerpts from the deposition of Mr. Rogers. The supplemental declaration and exhibits were accepted into the record and defendant was provided an opportunity to submit a sur-reply to respond to the new information.

This action was reassigned to the undersigned judge in September 2011. Prior to reassignment, defendant Lockheed Martin Corporation brought a motion to dismiss six of the seven claims brought in the first amended complaint. That motion was granted. The only remaining claim is plaintiff's claim for wrongful termination in violation of public policy. Defendant seeks summary judgment on this claim. This order follows full briefing, acceptance and consideration of supplemental briefing, and a hearing.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz*

*Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). The moving party is not required to prove the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

To prove the tort of wrongful termination, plaintiff must show she was terminated for one of the following types of conduct: (1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a constitutional or statutory right or privilege; or (4) reporting an alleged violation of a statute of public importance. *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 76 (1998). Plaintiff claims wrongful termination for exercising a statutory right in violation of a public policy. Specifically, plaintiff contends she was terminated for exercising her rights under California Government Code Sections 12940, *et seq*. (Fair Employment and Housing Act) and California Labor Code Sections 1102.5, *et seq*.

To state a claim for wrongful termination in violation of public policy, "a plaintiff must establish that there was an employer-employee relationship, a termination of employment or other adverse employment action, that the termination was in violation of a public policy, that the termination was the legal cause of plaintiff's damage and that the plaintiff suffered damage." *Diaz v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 57118, *6–7 (N.D. Cal. 2008) (Whyte, J.). For a policy to support a wrongful discharge claim, it must be: "(1) delineated in either a constitutional or statutory provision; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Stevenson v. Superior Court of Los Angeles Cnty.*, 16 Cal. 4th 880, 894 (1997).

As a threshold matter, plaintiff argues that summary judgment should be denied or deferred because discovery is still pending. This order now turns to that threshold issue.

**1. DEFERRAL OR DENIAL OF SUMMARY JUDGMENT IS NOT WARRANTED.**

Relying on Federal Rule of Civil Procedure 56(f), plaintiff argues in her opposition brief that the motion for summary judgment should be denied or continued because discovery is still pending (Opp. 3). The declaration submitted by counsel, however, urges that the motion should be denied or deferred pursuant to Rule 56(d) (Poole Decl. ¶ 11).

6

Rule 56(f) deals with judgment independent of the motion and does not appear to apply here. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)  defer consideration of the motion or deny it;
>
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
>
> (3)  issue any other appropriate order.

The burden is on plaintiff to show that the evidence sought likely exists and that it would prevent summary judgment. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past. "Stated another way, [our court of appeals] will only find that the district court abused its discretion if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." *Ibid.* (internal citations omitted). The purpose of Rule 56(d) is to prevent the nonmoving party from being "railroaded" by a premature summary judgment motion. Plaintiff has not met her burden.

*First*, plaintiff contends the motion should be denied or deferred because plaintiff needs to depose Mr. Rogers and defendant's person most knowledgeable. In her declaration, Attorney Poole states only that these depositions "will provide evidence vital to opposing the summary judgment" (Poole Decl. ¶ 5). The declaration provides no specific reason as to why plaintiff herself cannot present facts *essential* to justify her opposition to the motion. Furthermore, plaintiff's supplemental declaration, which appends excerpts from Mr. Rogers' deposition, has been accepted into the summary judgment record.

*Second*, Attorney Poole declares, that plaintiff needs additional time for discovery to obtain facts to support plaintiff's claims that she was wrongfully terminated. Attorney Poole recounts the history of discovery in this action. She states that on November 5, 2010, plaintiff propounded special interrogatories set number one and defendant responded with objections to 13 of the 22 interrogatories, providing an amended response on June 27, 2011. Also on November 5,

7

plaintiff propounded a request for production of documents. Defendant objected to six of the nine requests for production. Plaintiff propounded her second request for production of documents on May 17, 2011, and defendant objected to 15 of the 17 requests. Also on May 17, plaintiff served defendant with special interrogatories set number two and defendant objected to 19 of the 21 interrogatories. Plaintiff propounded her third request for production of documents on May 27 and defendant objected to 13 of the 14 requests. Attorney Poole declares that plaintiff intends to file a motion to compel (Poole Decl. ¶ 9). No such motion has been filed. On December 1, 2011, plaintiff served her first request for admissions (Poole Decl. ¶ 10).

Presumably, plaintiff recounts defendant's objections to discovery requests in order to suggest that defendant was stonewalling. The originally assigned judge referred discovery disputes in this action to Magistrate Judge Lloyd, whose standing order required parties to meet and confer regarding discovery disputes and within five business days of the meet and confer, file a "Discovery Dispute Joint Report" regarding unresolved discovery issues. The parties met and conferred about discovery dispute issues in July 2011. All of the issues were not resolved. Defendant states in its reply that after the meet and confer, Attorney Poole stated she would either forward revised discovery requests or prepare a draft discovery dispute joint report. She did not. A discovery dispute joint report was never filed (Reply Br. at 6).

Furthermore, on November 22, 2011, defendant sought permission to file a motion for summary judgment. Plaintiff did not oppose and did not raise the alleged discovery dispute issues. Even if stonewalling did occur, plaintiff has failed to timely raise this issue before the undersigned judge.

This case was filed on March 29, 2010. Defendant stated in its briefing that plaintiff has noticed only three depositions. The originally assigned judge extended the discovery cut-off date from June 28, 2011 to October 28, 2011. During that time, plaintiff took only one deposition. As part of the reassignment of this action to the undersigned judge, the discovery cut-off date was once again extended to December 30, 2011.

Plaintiff's discovery efforts have been dilatory, and Attorney Poole's declaration has failed to state "the specific facts that further discovery would reveal, and explain why those facts

8

would preclude summary judgment." *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Thus, plaintiff has not established that denial or deferral of the motion for summary judgment is warranted under Rule 56(d) in order to permit additional discovery. The order turns to the merits of the motion.

### 2. TERMINATION WAS NOT IN VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940.

Plaintiff alleges that she was terminated on "account of [her] exercise of [her] rights under" Government Code Sections 12940, *et seq.* (First Amd. Compl. ¶ 80). Government Code Section 12940(h) prohibits retaliatory discharge of an employee "because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." California has adopted the three-stage burden shifting test established by the United States Supreme Court for retaliation claims under FEHA. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). The analysis consists of three steps. *First*, the plaintiff must show: (1) she has engaged in "protected activity"; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action. *Second*, if an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. *Third*, if the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation disappears and the burden shifts back to the employee to prove intentional retaliation. *Ibid.*[*]

Plaintiff must first demonstrate that she engaged in "protected activity" by opposing practices proscribed by FEHA, filing a complaint, testifying, or assisting in a proceeding related to FEHA claims. Under FEHA an employee's opposition must be sufficient to "put an employer on notice as to what conduct it should investigate." *Yanowitz*, 36 Cal. 4th at 1047. In January 2009, plaintiff alleges she filed a complaint against defendant for "premises liability for the raised

---

[*] Plaintiff contends in her opposition that her wrongful termination claim is not based solely on retaliation but also on defendant's discrimination based on plaintiff's age and disability. Plaintiff states she will seek leave to amend the complaint to include "all violations of Government Code Section 12940" (Opp. 4). In August 2011, the originally assigned judge dismissed six of the seven claims brought in the first amended complaint (Dkt. No. 62). This dismissal included plaintiff's claims under FEHA for age and disability discrimination related to her termination. As such, only the retaliation claim survives.

9

1  tile that caused her injuries in January 2007" (First Amd. Compl. ¶ 32). On January 27, 2010,
2  plaintiff filed a charge with the EEOC against defendant and checked the pre-printed charge form
3  for "retaliation" and discrimination based on "age" and "disability." Plaintiff alleges, but submits
4  no evidence in support of her allegations, that she "complained throughout 2006 to defendant
5  Lockheed [Martin Corporation] about the discriminatory treatment and harassment she
6  experienced" and that she discussed this treatment with Julie Raimondi, human resources
7  manager, who allegedly failed to take corrective action (First Amd. Compl. ¶ 14). Plaintiff also
8  alleges that she told Mr. Bandettini that his repeated suggestions that plaintiff retire were
9  unlawful and also complained to Mr. Bandettini about harassment by Ms. Reid (First Amd.
10 Compl. ¶¶ 23, 28). Defendant concedes, for purposes of this motion, that by merely claiming to
11 have had a conversation with Ms. Raimondi, plaintiff "might [have] created a material factual
12 dispute regarding the existence of protected activity" (Br. 14). As such, this order moves on to
13 the causal link inquiry.

14 Even if plaintiff had presented evidence of engagement in protected activity, she has failed
15 to establish a "causal link existed between the protected activity and the employer's action."
16 Plaintiff did not file her claim with the EEOC until after she was terminated. During her
17 employment, she made no claim of discrimination, retaliation, or harassment to any government
18 agency. Even assuming her conversation with Ms. Raimondi constituted protected activity, there
19 is no evidence to show the causal link between that action and her lay-off.

20 Plaintiff disputes that Mr. Rogers made the decision to select plaintiff for lay-off. In
21 plaintiff's last minute supplemental submission, Attorney Iscandari stated in his declaration that
22 during his deposition, Mr. Rogers "made statements that contradicted the declaration filed in this
23 court" (Iscandari Supp. Decl. ¶ 4). Mr. Rogers' declaration in support of summary judgment
24 stated, "It was my decision to select Ms. Greer for layoff" (Rogers Decl. ¶ 23). During the
25 deposition, Attorney Iscandari asked Mr. Rogers, "Were you one of the decision-makers involved
26 in proposing the layoff of Ms. Greer?" Mr. Rogers responded over a vagueness objection, "No"
27 (Iscandari Supp. Exh. 3 at 30). Later, in response to another question asked by Attorney
28 Iscandari, Mr. Rogers stated, "I did not make the decision to terminate Ms. Greer. I made the

determination to submit employees for community of interest" (*id* at 83). Plaintiff's counsel did not submit the page of the deposition containing the question that elicited this response from Mr. Rogers. Even so, this deposition testimony does not create a genuine issue of material fact. It is true Mr. Rogers did not *propose* the lay-offs. This was done by senior management. It is also true that Mr. Rogers did not make the final decision to terminate plaintiff. This was done by the Committee. There is no issue as to who *selected* plaintiff for lay-off; it was Mr. Rogers.

There is no dispute that Mr. Rogers did not have knowledge of any allegedly protected activity in which plaintiff may have engaged. He never had any discussions with Ms. Raimondi regarding plaintiff prior to discussing plaintiff's exit interview. Prior to the filing of the instant action, Mr. Rogers was not aware of plaintiff's age and had no knowledge of her retirement plans, medical or disability history, or knowledge of the dates or duration of any of plaintiff's leaves of absence, or of her alleged complaints about treatment by co-workers (Rogers Decl. ¶¶ 17–19, 23). Plaintiff also stated in her deposition that she never met Mr. Rogers in person (Winters Exh. 4 at 23).

In her opposition brief, plaintiff contends that Mr. Rogers was "merely a 'cat's paw' conduit for Bandettini's and Reid's bias." Plaintiff cites no binding case law in support of the "cat's paw" theory, but more importantly, there is no evidentiary support for the allegation that Mr. Bandettini and Ms. Reid harbored bias toward plaintiff, that they expressed this bias to Mr. Rogers, that he was manipulated by their "discriminatory animus," and that this manipulation caused him to select plaintiff for lay-off (Opp. 3). Moreover, the discrimination and harassment claims alleged in the complaint were previously dismissed.

Defendant has met its initial burden of producing evidence that negates an essential element of the non-moving party's claims, but plaintiff has failed to produce admissible evidence to show there exists a genuine issue of material fact. Because plaintiff has failed to meet her burden to establish a prima facie case of retaliation the order need not address the remaining two steps in the burden-shifting analysis.

11

### 3. TERMINATION WAS NOT IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5.

Plaintiff's second theory of wrongful termination in violation of public policy is that defendant retaliated against plaintiff because of her exercise of statutorily protected rights under California Labor Code Section 1102.5 (First. Amd. Comp. ¶ 80). Section 1102.5 prevents an employer from retaliating against an employee for exercise of her rights to disclose information to a government or law enforcement agency regarding violations of a state or federal statute or regulation or for refusing to participate in an activity that would result in such violation. The latter is not at issue here.

To establish a prima facie case of retaliation in violation of Section 1102.5, plaintiff must show: (1) "she engaged in a protected activity;" (2) "her employer subjected her to an adverse employment action;" and (3) "there is a causal link between the two." *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1384 (2005); *see Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000). Plaintiff must demonstrate by a preponderance of the evidence that the protected activity was a "contributing factor in the alleged prohibited action against the employee. *See* CAL. LAB. CODE. § 1102.6. Once plaintiff has met this burden, the burden of proof shifts to the employer to "demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." *Ibid.*

Plaintiff has not shown that prior to her termination, she engaged in protected activity under Section 1102.5. Plaintiff alleges that she filed a workers' compensation claim regarding the injury she sustained on the job on January 11, 2007. Plaintiff has not alleged that she filed any other complaint with a governmental or law enforcement agency prior to her termination. But even if this order assumed that plaintiff's filing of the workers' compensation claim constituted a protected activity, plaintiff has failed to present evidence from which a jury could reasonably conclude by a preponderance of the evidence that the protected activity was a contributing factor in her termination.

Plaintiff makes no showing to rebut defendant's evidence that Mr. Rogers, who selected plaintiff for lay-off had "never been aware of any complaints Ms. Greer made to any

12

administrative or governmental agency regarding her employment with LMC" (Rogers Decl. ¶ 18).

The protection afforded whistle-blowers under Section 1102.5 is not extended to general complaints made about the work environment. *See Mueller v. Cnty. of Los Angeles*, 176 Cal. App. 4th 809, 822 (2009) ("Matters such as transferring employees, writing up employees, and counseling employees are personnel matters. To exalt these exclusively internal personnel disclosures with whistleblower status would create all sorts of mischief. Most damagingly, it would thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications on the job site."). Plaintiff has failed to produce admissible evidence to show there exists a genuine issue of material fact as to this claim. The order need not address the remaining steps of the burden-shifting analysis.

**CONCLUSION**

For the reasons set forth above, defendant Lockheed Martin Corporation's motion for summary judgment is **GRANTED**. This case is now ready to be presented to the court of appeals.

**IT IS SO ORDERED.**

Dated: January 11, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE